UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
CRIMINAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 2:23-cr-00146-NR |
| | : | |
| v. | : | |
| | : | |
| BRIAN DIPIPPA, | : | |
| | : | HONORABLE JUDGE |
| DEFENDANT. | : | J. NICHOLAS RANJAN |

**MOTION FOR PRETRIAL RELEASE IN PRESUMPTION CASE**

Defendant, Brian Dipippa by his attorney, Michael J. DeRiso, respectfully requests that this Court release him on bond pursuant to the Bail Reform Act, 18 U.S.C. § 3142; United States v. Salerno, 481 U.S. 739 (1987); and United States v. Dominguez, 783 F.2d 702 (7th Cir. 1986). Mr. Dipippa will rebut the presumption of detention with evidence of community and family ties, stable employment, a third-party custodian and others in home family support, and reporting to court, as is requested in this matter. All of these factors combined should lead this Court to find that release pending trial is appropriate in this case. In support, Mr. Dipippa states as follows:

I. **The Statutory Presumptions of Detention Should Be Viewed with Caution Because They Lead to High Rates of Detention for Low- Risk Defendants.**

Congress enacted the statutory presumptions of detention in the Bail Reform Act of 1984 (BRA) "to detain high-risk defendants who were likely to pose a significant risk of danger to the community if they were released pending trial."[1]

---

[1] Amaryllis Austin, The Presumption for Detention Statute's Relationship to Release Rates, 81 FEDERAL PROBATION 52, 56–57 (2017), archived at https://perma.cc/9HGU-MN2B.

But the presumptions of detention have not worked as intended, and federal pretrial detention rates have increased dramatically since 1984.[2] Before the BRA, less than two percent of federal arrestees were jailed pending trial.[3] According to the Bureau of Justice Statistics, the detention rate across the country increased from 59% in 1995 to 76% in 2010.[4] A recent study by the Administrative Office of the Courts (AO) attributed this "massive"[5] increase in detention rates to the presumptions of detention, especially as they are applied to low-risk defendants.[6] For example, the statutory presumptions in drug and firearm cases applied to nearly half of all federal cases each year.[7] If not for the presumptions of detention, low-risk defendants "might be released at higher rates."[8] Instead, the presumptions of detention have become "an almost de facto detention order in almost half of federal cases."[9]

Relying on the groundbreaking findings of the AO study, the Judicial Conference's Committee on Criminal Law recently determined "that the § 3142(e) presumption was unnecessarily increasing detention rates for low-risk defendants,

---

[2] Id. at 53.

[3] U.S. Department of Justice, Bureau of Justice Statistics, Pretrial Release and Detention: The Bail Reform Act of 1984 Table 1 (1988), archived at https://perma.cc/CS86-NJA8 (showing 1.7% of federal arrestees were detained pretrial in 1983).

[4] Austin, supra note 1, at 53 (citing U.S. Department of Justice Bureau of Justice Statistics, Pretrial Detention and Misconduct in Federal District Courts, 1995–2010 1 (2013), archived at https://perma.cc/U2V5-GYYP).

[5] Id. at 61.

[6] Id. at 57.

[7] Id. at 55 (the drug presumption "applied to between 42 and 45 percent of [all federal] cases every year").

[8] Id. at 57.

[9] Id. at 61.

particularly in drug trafficking cases."[10]  To address this problem, the Judicial Conference proposed significant legislative reform that would amend the presumption of detention in drug cases "to limit its application to defendants described therein whose criminal history suggests that they are at a higher risk of failing to appear or posing a danger to the community."[11]  While the Judicial Conference's proposed legislation has not been enacted yet, this Court can certainly take it into account when evaluating the presumption of detention in this case.

The problems with the statutory presumptions of detention are important to Mr. Dipippa's motion because, as the AO study confirms, high federal pretrial detention rates come with significant and wide-ranging "social and economic costs."[12]  For example, that study explains that "[e]very day that a defendant remains in custody, he or she may lose employment which in turn may lead to a loss of housing. These financial pressures may create a loss of community ties, and ultimately push a defendant towards relapse and/or new criminal activity."[13]  Indeed, the economic harms stemming from being detained pretrial persist for years: even three to four years after their bail hearing, people released pretrial were still 24.9% more likely to be employed than those who were detained.[14]

---

[10] Report of the Proceedings of the Judicial Conference of the United States 10 (September 12, 2017), archived at https://perma.cc/B7RG-5J78.

[11] Id.

[12] Id. at 61.

[13] Id.; see also Alexander M. Holsinger & Kristi Holsinger, Analyzing Bond Supervision Survey Data: The Effects of Pretrial Detention on Self-Reported Outcomes, 82(2) FEDERAL PROBATION 39, 42 (2018), archived at https://perma.cc/LQ2M-PL83 (finding that for people detained pretrial for at least three days, 76% had a negative job-related consequence and 37% had an increase in residential instability).

[14] Will Dobbie, et al., The Effects of Pretrial Detention on Conviction, Future Crime, and Employment: Evidence from Randomly Assigned Judges, 108(2) AMER. ECON. REV. 201, 204 (2018), archived at https://perma.cc/X77W-DAWV

It is unsurprising, then, that another AO study found a relationship "between the pretrial detention of low-risk defendants and an increase in their recidivism rates, both during the pretrial phase as well as in the years following case disposition."[15] Other, more recent studies, have confirmed that pretrial detention is criminogenic,[16] and cautioned that "lower crime rates should not be tallied as a benefit of pretrial detention."[17] One reason why pretrial detention is criminogenic is because jails' physical and mental health screening and treatment is often inadequate.[18] In addition, federal "pretrial detention is itself associated with increased likelihood of a prison sentence and with increased sentence length," even after controlling for criminal history, offense severity, and socio-economic variables.[19] These stark statistics must also be considered in light of the fact that 99% of federal defendants are not rearrested for a violent crime while on pretrial release.[20] In other words, pretrial detention imposes enormous costs on criminal defendants, their loved ones, and the community, in a counterproductive attempt to prevent crimes that are extremely unlikely to happen in the first place.

---

[15] Austin, supra note 1, at 54 (citing Christopher T. Lowenkamp, Marie VanNostrand, & Alexander Holsinger, Investigating the Impact of Pre-trial Detention on Sentencing Outcomes (The Laura and John Arthur Foundation 2013), archived at https://perma.cc/8RPX-YQ78).

[16] Paul Heaton, et al., The Downstream Consequences of Misdemeanor Pretrial Detention, 69 STAN. L. REV. 711, 718 (2017), archived at https://perma.cc/5723-23AS ("[D]etention is associated with a 30% increase in new felony charges and a 20% increase in new misdemeanor charges, a finding consistent with other research suggesting that even short-term detention has criminogenic effects."); Arpit Gupta, et al., The Heavy Costs of High Bail: Evidence from Judge Randomization, 45 J. OF LEGAL STUDIES 471, 496 (2016) ("[O]ur results suggest that the assessment of money bail yields substantial negative externalities in terms of additional crime.").

[17] Emily Leslie & Nolan G. Pope, The Unintended Impact of Pretrial Detention on Case Outcomes: Evidence from New York City Arraignments, 60 J. OF LAW AND ECON. 529, 555 (2017).

[18] See Laura M. Maruschak, et al., Medical Problems of State and Federal Prisoners and Jail Inmates, Bureau of Justice Statistics 9 (2014), archived at https://perma.cc/HGT9-7WLL (comparing healthcare in prisons and jails); see also Faye S. Taxman, et al., Drug Treatment Services for Adult Offenders: The State of the State, 32 JOURNAL OF SUBSTANCE ABUSE TREATMENT 239, 247, 249 (2007), archived at https://perma.cc/G55Z- 4KQH.

[19] James C. Oleson, et al., The Sentencing Consequences of Federal Pretrial Supervision, 63 Crime and Delinquency 313, 325 (2017), archived at https://perma.cc/QAW9-PY

There are also significant fiscal costs associated with high federal pretrial detention rates. As of 2016, the average pretrial detention period was 255 days (although several districts averaged over 400 days in pretrial detention).[21] The average length of pretrial detention has likely increased significantly over the past year due to the pandemic, and current orders postponing trials and other in person court appearances. Pretrial detention costs an average of $73 per day per detainee, while pretrial supervision costs an average of just $7 per day.[22] Thus, 255 days of pretrial detention would cost taxpayers an average of $18,615 per detainee, while pretrial supervision for the same time would cost an average of $1,785.[23]

## II.    Mr. Dipippa Should Be Released on Bond with Conditions.

This Court should release Mr. Dipippa with conditions. In this case, the statute creates a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." § 3142(e)(3). However, release is warranted here because there are numerous facts under 18 U.S.C. § 3142(g) that rebut the presumption of detention and demonstrate that there are conditions of release that will reasonably assure both Mr. Dipippa's appearance in court and the safety of the community.

As the Supreme Court held in United States v. Salerno, 481 U.S. 739 (1987), "[i]n our society liberty is the norm, and detention prior to trial . . . is the carefully limited

---

[20] Thomas H. Cohen, et al., Revalidating the Federal Pretrial Risk Assessment Instrument: A Research Summary, 82(2) FEDERAL PROBATION 23, 27 (2018), archived at https://perma.cc/8VM9-JH9T.
[21] Austin, supra note 1, at 53.
[22] Id.
[23] Id.

exception." Id. at 755.

This presumption of release is encapsulated in the BRA, 18 U.S.C. § 3142. The statute states that the Court "shall order" pretrial release, § 3142(b), except in certain narrow circumstances. Even if the Court determines under § 3142(c) that an unsecured bond is not sufficient, the Court "shall order" release subject to "the least restrictive further conditions" that will "reasonably assure" the defendant's appearance in court and the safety of the community. § 3142(c)(1) (emphasis added). Under this statutory scheme, "it is only a 'limited group of offenders' who should be detained pending trial." United States v. Shakur, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. No. 98-225, at 7 (1984), as reprinted in 1984 U.S.C.C.A.N. 3182, 3189); see also United States v. Byrd, 969 F.2d 106, 110 (5th Cir. 1992) ("There can be no doubt that this Act clearly favors nondetention.").

### III. The Presumption of Detention Can be Easily Rebutted, and, Once Rebutted, Must be Considered Alongside All of the Evidence that Weighs in Favor of Release.

At ECF Doc 37 Magistrate Eddy determined that a Rebuttable Presumption under 18 U.S.C. 3142(e)(2) existed and ordered Mr. Dipippa detained. The law is clear that (1) very little is required for a defendant to rebut the presumption and (2) courts must weigh the rebutted presumption against every factor that militates in favor of release before detaining a defendant. Moreover, under controlling Third Circuit precedent, this Court is not allowed to detain a defendant in a presumption case based solely on evidence of past dangerousness, the nature of the crime charged, or the weight of the evidence.

### A. Very little i.e., "some" evidence is required to rebut the presumption and it is easy to meet with credible evidence.

Under Third Circuit case law, very little is required for a defendant to rebut the presumption of detention. "The defendant must produce **some** credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community." U.S. v. Carbone, 793 F.2d 559, 560 (3d Cir. 1986) (emphasis supplied); U.S. v. Baez, CR 16-522, 2017 WL 528316, at *2 (E.D. Pa. Feb. 9, 2017) ("A defendant must produce only "some evidence" to rebut the presumption set forth in § 3142(e)"); United States v. Jessup, 757 F.2d 378, 384 (1st Cir.1985) (holding that a defendant only has a burden of production and only needs to produce "some evidence" to rebut the presumption); United States v. Alatishe, 768 F.2d 364, 371 (D.C. Cir. 1985) (stating that a defendant has a burden of production and only needs "to offer some credible evidence contrary to the statutory presumption").

The requirement of "some credible evidence" sufficient to rebut the presumption is a "relatively light" burden that "has been construed as easy to meet." United States v. Griffin, No. 07-02, 2007 WL 510140, at *2 (W.D. Pa. Feb. 12, 2007) (Cohill, J.) (internal quotations omitted). "The defendant's burden of production is relatively light and has been construed as easy to meet." U.S. v. Chagra, 850 F. Supp. 354, 357 (W.D. Pa. 1994) (Diamond, J.) (citing to United States v. Dominguez, 783 F.2d 702, 707 (7th Cir.1986).

The presumption of detention can be rebutted by "[*a*]*ny evidence* favorable to a defendant that comes within a category listed in § 3142(g) . . . ." United States v. Dominguez, 783 F.2d 702, 707 (7th Cir. 1986) (emphasis added). The Third Circuit has stated that a defendant may rebut the presumption through "testimony by co- workers, neighbors, family physician, friends, or other associates concerning the arrestee's character, health, or

family situation." ." US v. Perry 788 F.2d 100, 115 (3d Cir. 1986); U.S. v. Suppa, 799 F.2d 115, 120 (3d Cir. 1986).

"Once this burden of production is met, the presumption is 'rebutted.'" Dominguez, 783, at 707. (quoting United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985)) (emphasis added). As this Court knows, "the presumption only shifts to the defendant the burden of producing evidence of lack of dangerousness and that the burden of persuasion ultimately rests upon the United States." U.S. v. Perry, 788 F.2d 100, 115 (3d Cir. 1986); Suppa, 799, at 119; Dominguez, 783, at 707; Jessup, 757 F.2d at 384; United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985) (burden of persuasion rests with the government, not the defendant).

**B. Weighing the Rebutted Presumption.**

After the presumption is rebutted, the Court must weigh the presumption against all of the other evidence about the defendant's history and characteristics that tilts the scale in favor of release. See Dominguez, 783 F.2d at 707 ("[T]he rebutted presumption is not erased. Instead it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)."); See U.S. v. Chagra, 850 F. Supp. 354, 358 (W.D. Pa.1994) (citing, Dominguez, 783 F.2d at 707). The Court should not give the presumption undue weight if evidence relating to other § 3142(g) factors supports release.

**C. Forbidden Considerations in a Presumption Case.**

The Seventh Circuit has held that a judge may not detain a defendant in a presumption case based solely on (1) evidence of past dangerousness, (2) the nature and seriousness of the crime charged, or (3) the weight of the evidence against him.

First, even if the presumption is not rebutted, a judge is prohibited from detaining a defendant "based on evidence that he has been a danger in the past, except to the extent that his past conduct suggests the likelihood of future misconduct." Dominguez, 783 F.2d at 707. This means that, even when a defendant is charged with a serious crime or has a significant criminal history, there may be release conditions that will reasonably assure the safety of the community. Id.

Second, to rebut the presumption of dangerousness, a defendant need not "demonstrate that [the type of crime charged] is not dangerous to the community." Dominguez, 783 F.2d at 706. In Dominguez, the Seventh Circuit reversed a district court for expecting the defendants to "provide[] evidence that their participation in a narcotics distribution scheme was not a danger to the community." Id. As the court explained: "Under the district court's interpretation, few if any defendants in narcotics cases could ever rebut the presumption of dangerousness and thereby defeat pretrial detention..." Id. Despite this clear precedent, judges sometimes detain defendants based solely on the dangerousness inherent in the offense with which they are charged, whether the offense is drug distribution, gun possession, or terrorism. Detention on that ground is improper in this circuit. Instead, this Court must analyze the defendant's individual characteristics under § 3142(g).

Third, the Court is forbidden from relying solely on the weight of the evidence to detain a defendant in a presumption case. Indeed, the "weight of the evidence" is the "least important" of the various § 3142(g) factors. See, e.g., United States v. Townsend, 897 F.2d 989, 994 (9th Cir. 1990).

A defendant is not required to "'rebut' the government's showing of probable cause to believe that he is guilty of the crimes charged. That showing is not really at issue once the

presumptions . . . have been properly triggered." Id.  In sum, to rebut the presumption, a defendant simply needs to show is that there is "some evidence that he will not flee or endanger the community if released," and any evidence of the defendant's family ties, community ties, work history, or lack of criminal record can satisfy this requirement. Id. at 707.

IV. **Mr. Dipippa Produced "some evidence" Sufficient to Rebut the Presumption of Detention in this Case.**

There is more than "some credible evidence that Mr. Dipippa will appear and will not pose a threat to the community." United States v. Carbone, 793 F.2d 559, 560 (3d Cir. 1986). Accordingly, the presumption is rebutted in this case. Specifically, Mr. Dipippa can demonstrate credible evidence of the following § 3142(g) factors:

- **Mr. Dipippa's character**: To rebut the presumption of dangerousness at hearing, Mr. Dipippa previously submitted letters written by family members advocating for his pre-trial release and attesting to his "character, health, or family situation." US v. Perry, 788 F.2d 100, 115 (3d Cir. 1986); U.S. v. Suppa 799 F.2d 115, 120 (3d Cir. 1986).[1] In addition, attached to this Motion are two letters.  Attached as Exhibit A is a letter from Nancy Kahn discussing her interactions and knowledge of Mr. Dipippa and extolling his better virtues. Attached, as Exhibit B is a letter from Benjamin Knauss of Riseup Networks also extolling Mr. Dipippa's best qualities, remarking that he is "punctual, dependable and respectful of coworkers.

- **Employment/education**

    Mr. Dipippa attended high school at Keystone Oaks and obtained an Associate Degree in Computer

---

[1] 7.3.2023 Detention Hearing p. 42

at CCAC. He has a lengthy history of employment. He has worked most recently at Newday.host. Prior to that he was at Youth Radio in Oakland, California. Upon release he will return to work immediately at Newday.host.

- **Family ties/length of residence in community:**

Mr. Dipippa, age 36, was born and raised in Pittsburgh. He graduated from Keystone Oaks High School and obtained an Associate's Degree in computer science from CCAC. He does not possess a valid U.S. passport. His father Joe Dipippa lives in Dormont. He has one brother, also Joe who lives in Los Angeles. His wife is his co-defendant with whom the Court has approved contact.

- **Third party custodian:**
- If granted release, Brian Dipippa would stay with Kacyn Keys and Dustin Perri (married) who have agreed to act as Third Party Custodians, assuming they are suitable to the Court. Mr. Perri is an Art handler at the Carnegie Museum and Ms. Keys is a software Consultant with Hike2, a local consulting company. There are no guns or dogs in their home. There is not a landline in the residence, however, they have assured counsel that they will have one installed if required. They are available for further inquiry if the Court so requires. A Third Party Custodian will provide Mr. Dipippa with an additional level of support and supervision.

- **Criminal history**

Mr. Dipippa's criminal history consists of two summary disorderly conducts. Those summary convictions should not preclude this Court from granting release on stringent conditions. See United States v. Traitz, 807 F.2d 322, 324-25 (3d Cir. 1986) (holding district court did not err in concluding that house arrest would provide sufficient assurance even where government presented evidence that defendants' used "violence and intimidation" as part of

their offense conduct, and one defendant had "twice been convicted of armed bank robbery.").

As this Court knows, once the presumption is rebutted, which has been demonstrated, the Court must evaluate whether there are conditions of release that will reasonably assure both Mr. Dipippa's appearance in court and the safety of the community.

- **Recent demonstration of intention to appear.**

It must be considered that following the raid on his residence, Mr. Dipippa through prior counsel notified the Government that he would turn himself in if notified that he was indicted in federal court and a warrant was issued for his arrest and he did so. The fact that he attended all prior court appearances relating to his two summary convictions and this case is evidence that he is not considered a danger to the community, nor is he a risk of flight. See Torres-Rosario, 600 F. Supp. 2d at 334 (D.P.R. 2009) (finding presumption rebutted in part because, although defendant was on probation and had pending charges, "[t]here is no indication that Mr. Torres failed to appear at any court hearings in relation to any of these charges").

It should also be noted that Mr. Dipippa did not fail to appear at any proceeding related to the two summary disorderly conducts that form his past criminal history.

In addition, this is Mr. Dipippa' first federal case. Mr. Dipippa understands the repercussions if he were to violate. Also, this Court should consider the efficiency that the pretrial service team locally and nationally does in ensuring compliance. In fact, in 2019, the Western District of Pennsylvania experienced only one violation for failure to appear. See Exhibit 5. The level of supervision and support Mr. Dipippa would be receiving is significant. Mr. Dipippa is requesting the most stringent conditions, see below, and the pretrial service office is uniquely situated to supervise Mr. Dipippa to ensure the safety of the community.

V.  **Regardless of the Presumption, Mr. Dipippa Must be Released Because the Government Has Not Proven That There Are No Conditions That Will Reasonably Assure Appearance and Safety.**

Even if this Court finds that the presumption of detention is not rebutted, Mr. Dipippa should still be released because there are conditions that will reasonably assure the safety of the community and his appearance in court. A defendant cannot be detained "unless a finding is made that no release conditions will 'reasonably assure . . . the safety of the community'" and the defendant's appearance in court. Dominguez, 783 F.2d at 707 (quoting § 3142(e)). Here, the government has not carried its high burden of proving by clear and convincing evidence that there are no release conditions that will reasonably assure the safety of the community. See id. at 708 n.8. The government also has not proved by a preponderance of the evidence that there are no conditions that would reasonably assure Mr. Dipippa's appearance in court. Thus, Mr. Dipippa cannot be detained.

The following conditions of release under § 3142(c)(1)(B), and any other conditions the Court deems necessary, will reasonably assure Mr. Dipippa's appearance in court and the safety of the community.

- Place Mr. Dipippa in custody of third-party custodian "who agrees to assume supervision and to report any violation of a release condition to the court" [§ 3142(c)(1)(B)(i)]. As mentioned above, this mother, Kacyn and Dustin Perri will serve as the third-party custodian.
- Maintain employment.
- Follow restrictions on "personal associations, place of abode, or travel"
- Electronic monitoring, GPS monitoring, home detention (which allows Mr. Dipippa to leave for employment and other approved purposes).
- Avoid "all contact with a potential witness who may testify concerning the offense"
- Report on a "regular basis" or "daily basis" to Pre-Trial Services.

- Refrain from possessing "a firearm, destructive device, or other dangerous weapon"
- Refrain from "excessive use of alcohol"
- Refrain from "any use of a narcotic drug or other controlled substance . . . without a prescription"
- "[A]ny other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community." (emphasis added).

## VI.  Conclusion

For these reasons, Mr. Dipippa respectfully requests that this Court find that the presumption has been rebutted and release him with conditions.

                    Respectfully submitted,

                    */s/ Michael J. DeRiso*

August 30, 2023

Michael J. DeRiso, Esquire
*Attorney for Brian Dipippa*

Pa. Supreme Court Id. No.: 76555

DERISO LAW GROUP
Law & Finance Building, Suite 2100
429 Fourth Avenue
Pittsburgh, Pa. 15219
Phone: 412.765.1100
Fax:    412.281.1821
Email: mderiso@ddslawfirm.com